LEWIS v. BROWN.

Opinion delivered October 25, 1920.

1. APPEAL AND ERROR—CHANCELLOR'S FINDING.—In testing the correctness of the findings of fact made by a chancellor, it is proper to weigh the testimony in connection with all the attendant circumstances.

2. EVIDENCE—JUDICIAL NOTICE.—It is a matter of common knowledge that it is to the best interest of all concerned in an action involving the·cancellation of a lease that crops should be gathered speedily when mature.

3. FRAUD—REPRESENTATIONS AS TO VALUE OF LEASE.—Misrepresentation as to the value of a lease by the assignor thereof is matter of opinion only, and not a misrepresentation of a matter of fact such as would invalidate the sale.

4. COSTS—WHEN NOT ALLOWED ON APPEAL.—Costs will not be allowed on appeal on account of an insubstantial error in the amount of the judgment, in the absence of a motion calling attention thereto in the lower court.

Appeal from Yell Chancery Court, Dardanelle District; *Jordan Sellers,* Chancellor; affirmed.

STATEMENT OF FACTS.

On January 6, 1919, Chas. M. Brown commenced this suit in the circuit court against J. A. Lewis and C. H. Lewis to recover certain personal property which they had mortgaged to him to secure an indebtedness of $370.07, due January 1, 1919, with the accrued interest.

The defendants filed an answer and cross-complaint in which they alleged that the indebtedness for which the mortgage was given to secure was executed for the purchase price of a certain crop raised in the year 1918 and the assignment of a lease of certain land for the year 1919, and that said sale was procured by the fraudulent representations made by said Brown to them. The defendants asked that the case be transferred to the chancery court, and this was done without any objection on the part of the plaintiffs.

The material facts are as follows: The plaintiff, Chas. M. Brown, had rented 80 acres of land from Mrs. Neva Walden for the years 1918 and 1919. Brown rented something over twenty acres of the land to W. C. Reichter. There was a tenant house on the part of the land cultivated by Reichter, which he occupied. Brown raised a crop on the balance of the land himself. About the first of October, 1918, Brown sold his part of the crop to J. A. Lewis and C. H. Lewis and assigned to them his lease contract for the

whole 80 acres for the year 1919, for the sum of $1,000. The consideration was that J. A. and C. H. Lewis should assume the indebtedness of Brown to the merchants who had furnished him supplies for the year 1918, and they also executed to him a note for $370.07 due January 1, 1919, for the balance of the $1,000. This note was secured by a mortgage on the personal property which is sought to be foreclosed in this action. The note was executed on October 7, 1918, and J. A. and C. H. Lewis moved on the place in the tenant house which Brown had just vacated on the 15th day of October, 1918. It was understood that Reichter should continue to occupy the tenant house in which he lived until the first day of January, 1919, at which time he was to surrender possession to Brown. J. A. and C. H. Lewis continued to reside on the land and gather the crop until the 18th day of November 1918, at which time they served a written notice on Brown that they had rescinded the contract because Brown had procured its execution by making fraudulent representations to them. Immediately after giving this notice they moved off the land and left on it a bale of cotton and some corn which they had gathered. Brown refused to accept their rescission of the contract, but was advised to move back on the land and gather the crop in order to preserve it from waste and destruction. He did this and paid the proceeds on the merchandise account owed by him. The note which J. A. and C. H. Lewis had executed to him for the balance of the purchase price of the crop and the assignment of the lease was not paid and the object of this suit was to enable Brown to foreclose the mortgage on the personal property given to secure this note. Thus far the facts are practically undisputed.

J. A. and C. H. Lewis, as above stated, defended the suit on the ground that the contract with them had been procured by false representations on the part of Brown. According to the testimony of C. H. Lewis, who actually made the trade with Brown, the false representations consisted in the following particulars: Lewis and Brown went over the land together and examined the crop pur-

chased by Lewis before the contract was executed. It was not necessary to examine the portion of the land occupied by Reichter because that part of the crop was not purchased. Brown represented to Lewis that the tenant house occupied by Reichter was better than the one which he occupied and which Lewis had examined. He also represented to Lewis that the Reichter house had a fine well of water by it, but that the well needed cleaning out some. After Lewis moved on the place he discovered that the Reichter house leaked very badly and that the well of water was only six or seven feet deep and could not be used at all. Brown also represented to Lewis that he would surrender to him the possession of the part of the land worked by Reichter on the first of January, 1919, and knew at the time that Reichter was claiming the land for the year 1919, under his lease contract. Lewis also said that Brown represented to him that the land was free from overflow and that such was not the case. A brother of Lewis, who was not present on the day the crop was examined, but who was present on a subsequent day when the trade was completed, corroborated the testimony of his brother as to the representations made by Brown.

According to the testimony of the plaintiff, Chas. M. Brown, he told Lewis that the Reichter house was as large as the one he had occupied and pointed it out to Lewis about 300 yards away. He told Lewis that he understood the house leaked, and that he could go over and examine it for himself. According to his testimony, the house was about as large as the one he occupied himself. He did not tell Lewis that there was a good well of water in connection with the Reichter house. He told Lewis that there was a dispute between him and Reichter about the part of the land occupied by Reichter, and that he would deliver possession of it to Lewis on the first of January, 1919. He did recover possession of the Reichter house during the first part of January and would have turned it over to Lewis if the latter had not abandoned the contract. Brown told Lewis that the surface water would sometimes accumulate on a part of the land if the ditches were not

kept clean. Brown gathered the crop after Lewis left it in order to prevent waste and the destruction of the crop.

Mrs. Neva Walden testified that she was the owner of the land in question, and that it did not overflow from surface water when the ditches were kept cleaned out. Other facts will be stated or referred to in the opinion.

The chancellor found the issues in favor of the plaintiff and a decree of foreclosure of the mortgage was entered of record.

The defendants have appealed to this court.

*John M. Parker,* for appellants.

The indebtedness for which the mortgage was executed was procured by the fraudulent representations of Brown, and the contract and notes were obtained by fraud and void *ab initio* at law and in equity. 26 Ark. 380; 74 *Id.* 240, 143; 2 Story, Eq. Jur., p. 12, § 700.

*John B. Crownover,* for appellee.

1. It is well settled in this State in cases where rescission of contracts is attempted that four reasons or causes shall clearly exist; (1) that there was fraud in the inducement of the contract; (2) that it wrought injury; (3) that the relative positions of the parties were such that the vendee must necessarily have been presumed to have contracted upon the faith of such statements of the vendor, and (4) that he did rely upon the misrepresentations, and had a right to rely upon them, in full belief of their truth, exercising ordinary care and diligence on his part. See 47 Ark. 148; 101 *Id.* 603; 129 *Id.* 508. Fraud is never presumed but must be proved clearly. 9 *Id.* 482; 11 *Id.* 378; 63 *Id.* 22; 45 *Id.* 492; 37 *Id.* 145; 95 *Id.* 377; 104 *Id.* 396; 97 *Id.* 268; 101 *Id.* 608; 95 *Id.* 528; 2 Pom., Eq. Jur., § 927; 6 Cyc. 286. There is absolutely nothing in the record to show that Brown used fraud in the transaction. On the contrary, he invited the Lewises to come and look over the lands, crops and premises, and one of them did, bringing a brother with him. There is no testimony that the land overflowed.

2. No fraud was perpetrated by Brown upon the Lewises and no injury resulted to them.

3. The Lewises did not contract upon the faith of the statements, nor did they rely upon them, or have the right to rely upon them.

4. If the judgment is excessive a remittitur will cure this error, and appellee offers now to remit any excess.

HART, J. (after stating the facts). The testimony in this case is very voluminous on account of the witnesses having been examined and cross-examined at great length. We have endeavored to set out the salient features of the testimony in order to properly discuss and determine the correctness of the finding of fact made by the chancellor.

It will be observed that one of the grounds upon which a rescission of the contract is based by the defendants is that the plaintiff represented that the Reichter house had a good well of water and was free from leaks, when in truth and in fact the well of water was not fit for use and the house leaked very badly. The defendants moved on the place on the 15th day of October, 1918, and stayed there gathering the crop until the 18th day of November, 1918. Only a few days after they moved there they talked with Reichter and found out that the well of water could not be used and that the house leaked very badly. Yet they continued to reside there for about a month thereafter. The defendants also complained that Brown falsely represented to them that he would turn over to them the house and ground occupied by Reichter, when in truth and in fact he knew that Reichter was claiming to have the same leased for the year 1919. Brown began a suit against Reichter based upon the controversy between them in regard to this piece of land and recovered possession of it shortly after the first of January, 1919. In truth the lawsuit between Reichter and Brown was not for the pos-

session of the land itself, but for damages growing out of the breach of the contract of Brown with Reichter.

On the question of false representations on account of the land overflowing, but little need be said. The defendant's own testimony only goes to the effect that sometimes the surface water from the higher ground around the place spread over the land to a certain extent. According to the testimony of Mrs. Neva Walden, the owner of the land, the surface water never did come over the land when the ditches were kept cleaned out.

The defendants also claim that Brown made false representations to them about the cultivation of a pecan orchard on the place with regard to the amount of work he had done. Brown denies this. There was some evidence introduced by Brown tending to show that the defendants abandoned the contract because they found out that the crop was not yielding as much as they thought it would when they purchased it.

In testing the correctness of the findings of fact made by the chancellor, it is proper to weigh the testimony in connection with all the attendant circumstances. Hence it is proper to consider the fact that the defendants found out from Reichter all about the condition of his house and well and the claim made by him that he had the house and ground occupied by him leased for another year a few days after they moved on the place and that they continued to reside there for four weeks longer gathering the crop.

It is a matter of common knowledge that it is to the best interest of all concerned that the crop should be gathered speedily. Hence the fact that they waited four weeks during the time that the crop was being gathered, and that they continued to gather it is a salient fact to be considered in testing the *bona fides* of their claim for a rescission of the contract on the ground of false representations.

They also claim that Brown made false representations to them about the value of his lease contract for the year 1919. His representations about the value of his

lease contract was only a matter of opinion, and was not the representation of a matter of fact.

We have carefully read and considered the record and, when all the surrounding circumstances are considered, we have reached the conclusion that the finding of the chancellor is not against the preponderance of the evidence, and, under the settled rules of this court, must be affirmed, except as to a mistake in the amount of the judgment which is conceded by counsel for the plaintiff. Counsel for the plaintiff concedes that the judgment should have been for the sum of $370.07 with interest thereon at the rate of 10% per annum from October 7, 1918, instead of $385. Counsel claims that, had his attention been called to the matter, this correction would have been made in the court below, and that on this account the plaintiff should not be taxed with the costs of the appeal. Counsel is correct in this contention.

It is well settled in this State that costs will not be awarded where the error could have been corrected by motion in the lower court. It is only where a mistake in the judgment in the court below works a substantial injury to the rights of appellants that the appellees will be taxed with the costs of the appeal. *Euper* v. *State,* 85 Ark. 223; *Stuckey* v. *Lindley,* 84 Ark. 594, and *Booker* v. *Blythe,* 90 Ark. 165.

The remittitur will be entered as offered by counsel for the plaintiff, and, when so entered, the judgment will be affirmed.

It is so ordered.